**COLLETON PREPARATORY ACADEMY, INC.,**
**Plaintiff,**

v.

**BEAZER EAST, INC., and Hoover Universal, Inc., Defendants.**

**No. 2:03–0921–18.**

United States District Court,
D. South Carolina,
Charleston Division.

Sept. 8, 2004.

Charles Hiram Williams, II, Williams and Williams, Orangeburg, SC, Stephen P. Groves, Bradish Johnson Waring, Nexsen Pruet Jacobs Pollard and Robinson, Charleston, SC, for Plaintiff.

Saunders M. Bridges, Jr., Aiken Bridges, Florence, SC, Henry Buist Smythe, Julius H. Hines, Buist Moore Smythe and McGee, Charleston, SC, Richard Kenneth Wray, Sachnoff and Weaver, Chicago, IL, for Defendants.

Hoover Treated Wood Products Inc, Atlanta, GA, pro se.

## AMENDED ORDER

NORTON, District Judge.

### I. Background

On March 24, 2003, plaintiff Colleton Preparatory Academy, Inc. ("Colleton" or "plain-

tiff") filed an action in this court against Beazer East, Inc. ("Beazer") and Hoover Treated Wood, Inc. ("Hoover Wood") alleging various causes of action for negligence and violations of the South Carolina Unfair Trade Practices Act. All of the causes of action arise out of damage to Colleton's roof trusses allegedly caused by the treatment of those trusses with fire-retardant substances produced and sold by defendants or their predecessors and applied by their licensees. Hoover Wood was apparently served through the CT Corporation on April 1, 2003, but it did not respond and default was entered against Hoover Wood on May 15, 2003.

On June 6, 2003, Colleton filed an amended complaint substituting Hoover Universal, Inc. ("Hoover Universal" or "defendant") for Hoover Wood, and this court issued an order vacating the default and dismissing Hoover Wood without prejudice. After plaintiff filed its amended complaint, it served process on Hoover Universal. Hoover Universal never responded, and plaintiff obtained an entry of default against Hoover Universal on August 5, 2003. Hoover Universal filed this motion to set aside the entry of default on October 17, 2003.

## II.  Pertinent Facts

The facts surrounding plaintiff's service of process on Hoover Universal are virtually undisputed. Plaintiff served process on Hoover Universal's registered agent, The Corporation Company ("TCC") through certified mail, return receipt requested on June 17, 2003, shortly after filing the amended complaint. The postal form acknowledging receipt of service was signed by an agent of TCC (possibly William G. Korsak, though that fact is not essential to this decision) on June 23, 2003. TCC is in the business of being the registered agent for service of process for many companies, including both defendants Hoover Universal and Beazer. According to TCC's records and Korsak's affidavit, TCC forwarded the service of process to Beazer, who had already been served in the lawsuit, and not to Hoover Universal. Hoover Universal claims to have had no knowledge of the suit until learning it was in default.

The amended summons that was served on defendant through TCC had a caption that read "TO: HOOVER UNIVERSAL, INC." in a conspicuous position near the top of the first page. Plaintiff included a cover letter with the June 17 mailing that specifically named Hoover Universal as the party to be served. Korsak's affidavit alleges that TCC has no record of any amended summons and complaint being directed to Hoover Universal or of any attorney letter stating the same, but admits that TCC does not retain copies of documents such as the attorney letter. In a strange if not deliberately contradicting twist, TCC attached the very amended summons with the above referenced caption to Korsak's affidavit. Furthermore, TCC's records indicate that an attorney letter was in the mailing received on June 23, and that the letter was forwarded to Beazer along with the amended summons and complaint.

Defendant Hoover Universal moved to quash service on the grounds that it was insufficient because delivery was not restricted to the addressee as required by the Federal Rules of Civil Procedure (which incorporate state rules). In the alternative, Hoover Universal moved under Federal Rule of Civil Procedure 55(c) to have the entry of default set aside.

## III.  Defendant's Motion to Quash Service

■ Federal Rule of Civil Procedure 4(h) provides:

Service Upon Corporations and Associations. Unless otherwise provided by federal law, service upon a domestic or foreign corporation or upon a partnership or other unincorporated association that is subject to suit under a common name, and from which a waiver of service has not been obtained and filed, shall be effected:

(1) in a judicial district of the United States in the manner prescribed for individuals by subdivision (e)(1). . . .

Fed.R.Civ.P. 4(h). Federal Rule of Civil Procedure 4(e)(1), which is referenced in Rule 4(h) provides:

Service Upon Individuals Within a Judicial District of the United States. Unless oth-

erwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the United States:

> (1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State . . . .

Fed.R.Civ.P. (4)(e)(1). Furthermore, since this court is located in South Carolina, and Rule 4(e) allows for service pursuant to the rules of the state that encapsulates the judicial district, South Carolina Rule of Civil Procedure 4(d)(8) is also applicable. South Carolina Rule 4(d)(8) provides:

> Service by Certified Mail. Service of a summons and complaint upon an . . . [individual, corporation, or partnership] . . . may be made by the plaintiff or by any person authorized to serve process pursuant to Rule 4(c), including a sheriff or his deputy, by registered or certified mail, return receipt requested and delivery restricted to the addressee. Service is effective upon the date of delivery as shown on the return receipt. Service pursuant to this paragraph shall not be the basis for the entry of a default or a judgment by default unless the record contains a return receipt showing the acceptance by the defendant. Any such default or judgment by default shall be set aside pursuant to Rule 55(c) or Rule 60(b) if the defendant demonstrates to the court that the return receipt was signed by an unauthorized person. If delivery of the process is refused or is returned undelivered, service shall be made as otherwise provided by these rules.

S.C. R. Civ. P. 4(d)(8). Defendant argues that service was not proper under the federal rules, absent the federal rule's reference to state law, because the federal rules alone do not allow service of process by mail. Defendant further argues that service was not proper under South Carolina Rule 4(d)(8) because delivery was not restricted to the addressee.

■ Defendant is correct in its assertion that the Federal Rules of Civil Procedure no longer allow for service of process by mail unless it is allowed by the state where the district court presiding over the action sits or it is allowed in the state where process was served. *See Langley v. Graham,* 322 S.C. 428, 472 S.E.2d 259, 261 (App.1996) (noting that "the new federal rules have abolished service by mail, except to the extent permitted by applicable state practice"); *see also, Larsen v. Mayo Med. Ctr.,* 218 F.3d 863, 868 (8th Cir.2000) (noting that delivery under the federal rules means personally served, not merely mailed). As such, the question becomes whether service of process was proper under South Carolina's Rules of Civil Procedure.

Defendant argues that plaintiff did not restrict delivery to the addressee; therefore, service of process did not comply with South Carolina Rule of Civil Procedure 4. Defendant is correct in that delivery was not restricted to TCC, but defendant's argument is an overly technical interpretation of the South Carolina rule. Defendant is not and cannot argue that delivery should have been restricted to the defendant, Hoover Universal, itself because then the process would not have been capable of being delivered to Hoover Universal's registered agent, TCC. Instead, defendant asserts that delivery should have been restricted to TCC, who defendant apparently concedes did, in fact, receive the process. Such a technical interpretation is not warranted by South Carolina precedent.

The Supreme Court of South Carolina has "never required exacting compliance with the rules to effect service of process." *Roche v. Young Bros.,* 318 S.C. 207, 456 S.E.2d 897, 899 (1995) (citing *Foster v. Crawford,* 57 S.C. 551, 36 S.E. 5 (1900); *Saunders v. Bobo,* 2 Bailey 492 (1831); and *Miller v. Hall,* 1 Speers 1 (1842)). The cases defendant cites can be distinguished because they deal with instances where the defendant did not receive proper notice of the action against it because the addressee never received the process. *See Roche,* 456 S.E.2d at 899 (noting that service was addressed to Edward L. Young, but J.N. Young picked up the process); *Langley v. Graham,* 322 S.C. 428, 472

S.E.2d 259, 259–60 (App.1996) (noting that process was addressed to defendant at his private residence, but defendant's sister signed for the process).

In the instant case, the addressee, TCC, did receive the process and the process was clearly captioned "TO: HOOVER UNIVERSAL, INC." There is corroborating evidence that the process further had a letter directing TCC to forward the process to Hoover Universal. TCC is a company whose business is to deliver service of process to other companies that have made TCC an agent for such service. Plaintiff did everything it was required to do in mailing the process to TCC, return receipt requested, and obtaining a signature from TCC's agent, William G. Korsak.[1] As service of process was sufficient, the next question is whether the Entry of Default should be set aside under Federal Rule of Civil Procedure 55(c).

### IV. Defendant's Rule 55(c) Motion

■ Federal Rule of Civil Procedure 55(c) provides "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed.R.Civ.P. 55(c). Rule 60(b) provides six grounds for relief from judgment, including "mistake, inadvertence, surprise, or excusable neglect." See Fed.R.Civ.P. 60(b). As this court has noted in the past, Rule 55 and Rule 60 have different standards of review, but there has been some mixing and mingling of the standards in Fourth Circuit precedent, requiring careful articulation in analyzing such motions. Palmetto Fed. Sav. Bank v. Indus. Valley Title Ins. Co., 756 F.Supp. 925, 929 (D.S.C.1991). As there has been no judgment entered in the present case, Rule 55 governs this court's decision.

■ It is now settled that "although the clear policy of the Rules is to encourage dispositions of claims on their merits, trial judges are vested with discretion, which must be liberally exercised, in entering [default] judgments and in providing relief therefrom." United States v. Moradi, 673 F.2d 725, 727 (4th Cir.1982) (citations omitted). Furthermore, the decision to set aside an entry of default is "committed to the sound discretion of the trial court" and should only be disturbed upon a finding of an abuse of discretion. See Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir.1987); see also Williams v. Blitz, 226 F.2d 463 (4th Cir.1955); Papagianakis v. The Samos, 186 F.2d 257, 263 (4th Cir.1950). Generally speaking, "a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense." Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp., 383 F.2d 249, 251 (4th Cir.1967).

In Palmetto, this court reviewed the standards used in Rule 55 and Rule 60 cases in the Fourth Circuit and determined that a party attempting to have a judgment set aside bears a heavier burden than a party that is simply in default. Palmetto, 756 F.Supp. at 931. However, this court did note that "the factors set forth in Moradi, though they were applied to a Rule 60(b) motion, also provide useful guidelines in a motion to set aside an entry of default." Id. These factors include: "[1] the personal responsibility of the [defaulting] party [as opposed to the party's attorney], [2] the prejudice to the party [not in default], [3] whether there is a history of dilatory action, and [4] the availability of sanctions less drastic." Moradi, 673 F.2d at 728. Of the Moradi factors, courts have placed the greatest significance on the first one. See Moradi, 673 F.2d at 728; Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 811 (4th Cir.1988); Lolatchy, 816 F.2d at 953; Palmetto, 756 F.Supp. at 932.

■ In short, the factors that determine whether an entry of default should be set aside include (1) the promptness of the de-

---

1. The parties agree that TCC was the registered agent for Hoover Universal and that Korsak was an agent of TCC.

faulting party, (2) the presence or absence of a meritorious defense, (3) whether the party or counsel bears the responsibility for the default, (4) the prejudice that would result to the innocent party, (5) whether the defaulting party has a history of dilatory conduct, and (6) the availability of sanctions less drastic. All of these factors should be applied more leniently when the action is one under Rule 55 as opposed to one under Rule 60, and the court should always keep an eye toward the preference for meritorious resolutions of disputes. *Palmetto*, 756 F.Supp. at 932.

By coincidence, defendant's national counsel learned of the entry of default on October 8, 2003. Defendant filed the instant motion nine days later. From the date of actual notice of default until the instant motion, defendant seems to have acted promptly.

Defendant also seems to be able to proffer at least some evidence that it may have a meritorious defense to the instant action. "[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *Moradi*, 673 F.2d at 727 (citing *Cent. Operating Co. v. Util. Workers of Am.*, 491 F.2d 245, 252 n.8 (4th Cir.1974)). Defendant submitted the reports of two experts that refute claims of negligence against Hoover Universal and has raised issues about statutes of repose with regard to the date of the buildings involved. Despite plaintiff's assertion that the statutes of repose do not apply because plaintiff alleged gross negligence, there do seem to be some questions as to whether there was gross negligence and consequently as to whether the statutes would apply.

As between defendant's own responsibility and that of its counsel for causing the entry of default, the blame lies solely with the defendant. Defendant hired TCC to be its registered agent for service of process. TCC received process that, had TCC used a modicum of care, should have been sent to defen-

dant. It is very clear that the mistake is not one made by defense counsel and even clearer that it is not one made by plaintiff. This court cannot concern itself with the actions of entities not a party to the lawsuit: the issue of responsibility as between a principal and its agent is a matter to be taken up between the parties to the agency relationship.

While it is true that attorneys are agents for their clients, courts have singled out the mistakes of attorneys for lenience to parties in the context of entries of default because lawyers so often have sole responsibility and discretion in the purely legal aspects of litigation. Hired corporations, such as TCC, who are in the business of acting as registered agents for other entities do not share the same relationship with their clients that lawyers do, and the same policies are not at play. To expand the lenience granted to parties because of the mistakes of their lawyers to all agents of parties would be to effectively eliminate the procedural tool of default with regard to purely legal entities, because after all, corporations only act through agents. Such an expansion would gut a valuable incentive that is in place to expedite the judicial process. In the instant case, this court finds that there was clearly neglect on the part of TCC but that this neglect cannot be seen as excusable.

The Fourth Circuit upheld a judgment of default in a similar situation where the defendant acknowledged receiving process, but the process never made it into the proper hands of the defendant's attorneys. The Fourth Circuit noted that:

> after conducting a search of its files and records, [defendant] was unable to find any record of its having received the process. [Defendant] could not explain the disappearance of the summons and complaint. [Defendant's] affidavit stated only that "it appears that the complaint and process in this action never reached the claims department and was, therefore, never brought to the attention of any of the claims people of Lexington Insurance Company so that the matter could be re-

ferred to an attorney and an answer filed...."

*Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 897 (4th Cir.1987). The Fourth Circuit continued that the "unexplained disappearance of the summons and complaint" did not constitute grounds for relief. While that case dealt with a Rule 60 motion, this court feels that the reasoning is still instructive.

The prejudice to plaintiff in this case rests, as it often does with default, in the delay in the proceedings. While defendant's agent was mishandling process and while plaintiff was forced to defend this motion and postpone the substantive pursuit of its claims at increased expense, plaintiff's buildings have continued to deteriorate. Further delay postpones plaintiff's opportunity to accurately assess its options for funding restoration. Furthermore, plaintiff's general position would be prejudiced by granting defendant relief from default in that plaintiff could never have confidence in its service of process and hence in the timing of its legal actions.

There are no other instances of dilatory action alleged against defendant, but misplacing the very process that brings defendant in as a party is a serious oversight and a significant hindrance to an already burdened judicial process. Less drastic sanctions would seem impotent in this context because they would not solve any of the prejudices inflicted upon plaintiff other than the costs of defending this motion, and would do little to deter defendant from further similar actions.

This court finds that the most important factor, the responsibility of the default, rests with the defendant, and while that factor is not dispositive, there are other equitable reasons for continuing to hold defendant in default.

### V. Conclusion

It is therefore,

**ORDERED**, for the foregoing reasons, that defendant's motion to quash service of process is **DENIED**, and defendant's motion to set aside the entry of default is also **DENIED**.

**AND IT IS SO ORDERED.**