PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

COLLETON PREPARATORY ACADEMY,
INCORPORATED,

*Plaintiff-Appellee,*

v.

HOOVER UNIVERSAL, INCORPORATED,

*Defendant-Appellant.*

No. 09-1480

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, Chief District Judge.
(2:04-cv-00531-DCN)

Argued: May 13, 2010

Decided: August 5, 2010

Before KING and DAVIS, Circuit Judges, and
C. Arlen BEAM, Senior Circuit Judge of the United States
Court of Appeals for the Eighth Circuit,
sitting by designation.

Affirmed in part, reversed in part, vacated in part, and
remanded by published opinion. Judge Davis wrote the opinion, in which Judge King and Senior Judge Beam joined.

## COUNSEL

**ARGUED:** Richard K. Wray, REED SMITH, LLP, Chicago,
Illinois, for Appellant. Charles H. Williams, II, WILLIAMS

& WILLIAMS ATTORNEYS AT LAW, Orangeburg, South Carolina, for Appellee. **ON BRIEF:** Casey L. Westover, REED SMITH, LLP, Chicago, Illinois; Charles J. Baker III, BUIST, MOORE, SMYTHE, MCGEE, PA, Charleston, South Carolina, for Appellant.

---

## OPINION

DAVIS, Circuit Judge:

Hoover Universal, Inc. ("Hoover Universal") timely appeals from an adverse judgment awarding substantial damages in this diversity action, contending that the judgment is tainted by the district court's refusal to set aside the clerk's entry of default against it. Hoover Universal's default resulted when its resident agent for service of process failed to deliver the summons and complaint to Hoover Universal. We are persuaded, for the reasons stated within, that the district court abused its discretion in refusing to vacate the entry of default. Accordingly, we vacate the judgment and remand the case for further proceedings consistent with this opinion.

I.

Colleton Preparatory Academy, Inc. ("Colleton"), which operates a small private school in Walterboro, South Carolina, filed suit in the United States District Court for the District of South Carolina on March 24, 2003, against two non-parties to this appeal, Beazer East, Inc. ("Beazer") and Hoover Treated Wood Products, Inc. ("Hoover Wood"), alleging claims for negligence and for violation of the South Carolina Unfair Trade Practices Act ("UTPA"). All the claims arose from alleged damage to the roof trusses and sheathing on several Colleton buildings allegedly caused by fire-retardant substances produced and sold by the defendants or their predecessors-in-interest. Beazer timely filed an answer deny-

ing liability and asserting affirmative defenses; Hoover Wood failed to answer, and Colleton promptly obtained an entry of default against Hoover Wood.

In fact, Colleton had sued the incorrect defendant in joining Hoover Wood. Accordingly, on or about June 6, 2003, Colleton filed an amended complaint substituting Hoover Universal for Hoover Wood. The district court issued an order vacating the entry of default and dismissing Hoover Wood without prejudice. Colleton served a copy of the summons and amended complaint on Hoover Universal by certified mail through service on the latter's registered agent for service of process, The Corporation Company ("TCC"), and received a certified mail receipt showing that TCC had accepted service on June 23, 2003. Unbeknownst to the parties, however, TCC negligently failed to forward the suitpapers or otherwise to notify Hoover Universal of the existence of the lawsuit. As a result of TCC's error, Hoover Universal failed to file a timely answer to the amended complaint. Colleton moved in due course for entry of default, *see* Fed. R. Civ. P. 55(a),[1] and the clerk entered default against Hoover Universal two days later, on August 5, 2003. The district court also ordered Colleton to set a date for a trial on damages, but no such proceeding had been calendared by the time Hoover Universal learned of the lawsuit less than two months later.

As the district court found, one of Hoover Universal's lawyers learned of the lawsuit "by coincidence," *see Colleton Preparatory Academy, Inc. v. Beazer East, Inc.*, 223 F.R.D. 401, 406 (D.S.C. 2004) (denying motion to set aside entry of

---

[1]The present version of Rule 55(a) provides:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a). Neither the 2007 amendments nor the 2009 amendments to the rule bear on the issues presented in this case.

default), during an October 8, 2003, conversation about a separate case with a paralegal working in the office of one of Colleton's lawyers. On October 17, 2003, nine days later, Hoover Universal filed a motion to quash service of process and to set aside the entry of default. The district court held a hearing and denied both motions by order entered on December 1, 2003, as amended on September 8, 2004. *Id.* The district court also ordered that a trial on damages take place within 60 days.

Before the damages trial occurred, with the consent of all parties, the district court "bifurcated" Colleton's claims against Beazer (relating to two buildings) from those against Hoover Universal (relating to only one building) in order to deal with a conflict of interest discovered by one of Colleton's attorneys. Colleton filed a new complaint on February 20, 2004 naming Hoover Universal as the sole defendant and the clerk assigned a new case number to the newly-filed action.[2] When Hoover Universal filed an answer to the newly-filed complaint, however, the district court struck the answer, at Colleton's request, concluding that the newly-filed complaint was a mere administrative formality, and that any judgment awarded to Colleton would be based on the first amended complaint as to which Hoover Universal was in default.

In advance of the trial on damages, Hoover Universal filed eight motions *in limine*, seeking, *inter alia*, a limitation on the measure of Colleton's damages. Hoover Universal also sought to maintain the case on the district court's list for jury trial, which Colleton had requested in its complaints. The district court declined to empanel a jury for the reasons stated in an order filed on December 20, 2004. Thereafter, the district court conducted a two-day, non-jury damages trial beginning on January 31, 2005. At the close of the evidence, Hoover Universal moved for judgment as a matter of law, arguing,

---

[2]Colleton and Beazer settled the initial case and a stipulation of dismissal was entered on May 6, 2004.

*inter alia*, that the South Carolina economic loss doctrine barred recovery under the negligence count and that recovery under the UTPA was barred for lack of privity between Colleton and Hoover Universal or its predecessor. The district court found in favor of Colleton on the UTPA claim and in favor of Hoover Universal on the negligence claim, setting damages in different amounts depending upon when (summer or winter) repairs to the Colleton building might be completed.

Both parties filed motions to alter or amend and for reconsideration. After extensive proceedings involving the post-judgment motions, the district court filed an original and then an amended order certifying questions regarding the South Carolina economic loss doctrine and the necessity of privity in a UTPA claim to the South Carolina Supreme Court. The South Carolina Supreme Court accepted and answered the certified questions, concluding that (1) an exception to the economic loss doctrine applied under the circumstances of this case and (2) privity was not a requirement in this action under the UTPA. *Colleton Prep. Acad., Inc. v. Hoover Universal, Inc.*, 666 S.E.2d 247 (S.C. 2008), *overruled in relevant part*, *Sapp v. Ford Motor Co.*, 687 S.E.2d 143 (S.C. 2009).

On March 25, 2009, the district court amended its findings of fact and conclusions of law to incorporate the South Carolina Supreme Court's answers to the certified questions and awarded judgment in favor of Colleton under both common law negligence and UTPA. The court affirmed its previous damages award of $871,690.15, and awarded Colleton $290,563.38 in costs and attorney's fees.

Hoover Universal timely appeals, assigning error in the district court's: (1) denial of its motion to set aside the order of default; (2) denial of its motion to quash service of process; (3) denial of its motion for judgment as a matter of law; (4) denial of its request for an abatement of damages because the allegedly damaged roof system had outlived it useful life; and

(5) rejection of its contention that Colleton had made a binding waiver of its claim for attorney's fees.

## II.

## A.

We review a district court's refusal to set aside an entry of default for abuse of discretion. *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 203 (4th Cir. 2006); *Consolidated Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967). As we stated in *Payne*, 439 F.3d at 204-05:

> When deciding whether to set aside an entry of default, a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic.

*See* Fed. R. Civ. P. 55(c) (providing that "[f]or good cause shown the court may set aside an entry of default").

We have repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits. *E.g.*, *Tazco, Inc. v. Director, Office of Workers Compensation Program, U.S. Dep't of Labor*, 895 F.2d 949, 950 (4th Cir. 1990) ("The law disfavors default judgments as a general matter."); *Consolidated Masonry & Fireproofing*, 383 F.2d at 251 ("Generally a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense."). This imperative arises in myriad procedural contexts, but its primacy is never doubted.[3]

---

[3]Albeit in the context of determining the preclusive effect of a dismissal under Fed. R. Civ. P. 41(a)(2) (providing for voluntary dismissal with

B.

In denying the motion to vacate the entry of default, the district court forthrightly acknowledged our strong policy in favor of merits-based adjudication and applied the *Payne* factors, while citing to predecessors of *Payne* from this court and, in particular, an earlier opinion in the District of South Carolina. *See Colleton Preparatory Academy, Inc. v. Beazer East, Inc.*, 223 F.R.D. 401, 406 (D.S.C. 2004) (discussing, *inter alia*, *Palmetto Fed. Sav. Bank v. Indus. Valley Title Ins. Co.*, 756 F.Supp. 925 (D.S.C. 1991), *opinion vacated and case dismissed*, 1991 WL 832830 (D.S.C. May 15, 1991)). Specifically, the district court correctly found that Hoover Universal presented evidence of a meritorious defense. *Id.*[4]

---

leave of court of a plaintiff's claims), what was said in *Choice Hotels Int'l, Inc. v. Goodwin & Boone*, 11 F.3d 469, 471-72 (4th Cir. 1993), accurately captures the strength and intensity of this court's longstanding policy in favor of merits-based adjudication:

> [W]e have long adhered to "the sound public policy of deciding cases on their merits," *Herbert v. Saffell*, 877 F.2d 267, 269 (4th Cir. 1989) (quotation omitted); *Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978); *Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974), and not "depriving . . . part[ies] of [their] 'fair day in court.' *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 504 (4th Cir. 1977) (quoting *Gill v. Stolow*, 240 F.2d 669, 670 (2d Cir. 1957) (Clark, J.)), *cert. denied*, 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978)."

[4]Indeed, Hoover Universal later prevailed in federal court in South Carolina on summary judgment in a substantially identical case based on the state statute of repose. *See South Carolina Dep't of Mental Health v. Hoover Universal, Inc.*, 2006 WL 6463481 (D.S.C. Mar. 6, 2006). The judgment in favor of Hoover Universal was later vacated and the case dismissed, however, based on the discovery of a fatal defect in the federal district court's subject matter jurisdiction. This court affirmed the dismissal of the case for lack of subject matter jurisdiction. *South Carolina Dep't of Disabilities and Special Needs v. Hoover Universal, Inc.*, 535 F.3d 300 (4th Cir. 2008). Moreover, a recent opinion of the Supreme Court of South Carolina confirmed the district judge's initial view that under the economic loss doctrine, most of, if not the entirety of, Colleton's negligence claim lacks legal merit. *Sapp v. Ford Motor Co.*, 687 S.E.2d 143 (S.C. 2009), *overruling in part*, *Colleton Prep. Acad., Inc. v. Hoover Universal, Inc.*, 666 S.E.2d 247 (S.C. 2008).

Furthermore, the district court found that Hoover Universal acted with the requisite promptness and diligence in seeking to set aside the entry of default when it acted within nine days after its counsel learned of the existence of the case. 223 F.R.D. at 406; *see Tazco*, 895 F.2d at 950 (eight days). Furthermore, the district court found "no other instances of dilatory action [by Hoover Universal]." 223 F.R.D. at 406. Moreover, the district court acknowledged its awareness that a less drastic sanction than maintaining the entry of default must be considered, *id.*, although it neither explained, nor even mentioned in its order, why an award of attorney's fees and costs to Colleton in opposing the motion to set aside the entry of default, as Hoover Universal suggested, would be inappropriate. Thus, fully four of the six factors identified in *Payne* as informing the exercise of discretion whether to vacate an entry of default weighed significantly in favor of Hoover Universal.

As to a fifth factor, the district court found that any "further delay" in the action would unduly prejudice Colleton. *See* 223 F.R.D. at 406 (finding that setting aside the entry of default would "postpone[ ] plaintiff's opportunity to accurately assess its options for funding restoration . . . . [and that] plaintiff's general position would be prejudiced . . . in that plaintiff could never have confidence in its service of process and hence in the timing of its legal actions.") (alterations added). This finding is highly suspect.

In the context of a motion to set aside an entry of default, as in other contexts, delay in and of itself does not constitute prejudice to the opposing party. *See, e.g., Indigo America, Inc. v. Big Impressions, LLC*, 597 F.3d 1, 4 (1st Cir. 2010). As we noted in *Payne*, the issue is one of *prejudice to the adversary*, not merely the existence of delay. Our review of the record does not sustain the district court's view that undue prejudice would have been visited upon Colleton if the entry of default had been set aside in November 2003, less than three months after a timely answer to the complaint would

have been filed and the case made ready for the commencement of discovery. We by no means impose on the district court a duty of 20/20 foresight, but the course of the trial court proceedings in this case, even with the default left in place, from the damages trial in January 2005 to final judgment in March 2009 (more than four years) was reasonably foreseeable in November 2003, given the magnitude of Colleton's claims (against what was then two distinct defendants) and the character of the defenses asserted. Discovery (including expert discovery) and related pretrial proceedings surely would be expected to consume a reasonable period of time.[5]

Furthermore, we have not heretofore countenanced as a factor deserving weight in the analysis of a Rule 55(c) motion to set aside an entry of default, whether a "plaintiff could . . . have confidence in its service of process and . . . the timing of its legal actions," and we decline to do so under the circumstances presented here. Moreover, as obvious as it may be, it bears mention that no cognizable prejudice inheres in requiring a plaintiff *to prove* a defendant's liability, a burden every plaintiff assumes in every civil action filed in every federal court.[6]

---

[5]Indeed, as discussed *supra* p. 4-5 in text, critical legal issues, including those surrounding the application of the economic loss doctrine and the necessity *vel non* of privity in respect to the statutory claim under UTPA, surfaced in the case only in the context of post-verdict motions, prompting considerable delay in bringing the case to conclusion. Thus, had Hoover Universal been permitted to file pre-answer motions pursuant to Fed. R. Civ. P. 12, there is strong reason to believe that those legal issues would have been aired in a more timely and efficient manner, and the overall delay in bringing the case to conclusion greatly lessened.

[6]As the Eight Circuit correctly observed:

Entry of default raises no protectable expectation that a default judgment will follow, and a party's belief in the integrity of the system must include, to be reasonable, knowledge that a system of integrity makes exceptions "for good cause shown." As numerous decisions make clear, prejudice may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits.

*Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 785 (8th Cir. 1998) (citation omitted).

At bottom, therefore, regarding the issue of prejudice to Colleton from setting aside the entry of default as of November 2003, we conclude that the record is, at best, neutral.

Ultimately, in refusing to set aside the entry of default, the district court placed overarching emphasis on a single *Payne* factor: the "personal responsibility of the defaulting party." *See* 223 F.R.D. at 406 ("This court finds that the most important factor . . . [is] the responsibility of the default[.]"). The court seemed particularly bewildered that although the summons and complaint (and a letter accompanying them) all clearly stated that the process was intended for Hoover Universal, TCC sent the amended summons and complaint to Beazer (for whom TCC was also a resident agent, and whose name was listed first among the defendants in the caption of the action) and not Hoover Universal. As the district court correctly explained, here was a situation where TCC, Hoover Universal's agent, hired for the sole purpose of being the company's registered agent for service of process, was clearly at fault.[7]

As framed by the district court, consideration under the *Payne* factor of whether a defaulting party bore "personal responsibility" for the default required it to attribute the actions of a corporation's non-attorney agents directly to the corporation. Accordingly, the court concluded that Hoover Universal was "personally responsible" for the default. *Id.*

---

[7]Indeed, in its order striking Hoover Universal's answer to the newly-filed complaint after the claims were bifurcated, the district court described an affidavit sworn to by one of the responsible individuals at TCC as "patently false." *See* Case No. 2:04-cv-00531-DCN, Docket No. 18, at 7 n.3 (D.S.C. June 30, 2004). Evidently, the court was troubled by the seeming contradictory attestations of TCC that (1) it never received the process intended for Hoover Universal, on the one hand, and (2) it erroneously forwarded the process intended for Hoover Universal to one of its other principals, Beazer, which, as mentioned, had already been served in the action. In any event, the district court made plain that it "held [Hoover Universal] responsible" for the "false affidavit." *Id.*

(citing *Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 897 (4th Cir. 1987); c*f. Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 953 (4th Cir. 1987) (vacating default where the attorneys were at fault, not the defendants).

We need not examine here whether and under what circumstances an agent's mishandling of process should be charged to a defendant. Rather, we are satisfied that the district court abused its discretion when, in the face of our time-worn commitment to the resolution of disputes on their merits, and in light of overwhelming evidence supporting "good cause" to vacate the entry of default under Fed. R. Civ. P. 55(c), it relied too heavily on *Park Corp.* in denying Hoover Universal's motion to vacate the entry of default.

In *Park Corp.*, the defaulting party, Lexington Insurance, lost the summons and complaint after they had been received in its *own mailroom* as a result of mishandling by its *own employees*. Moreover, Lexington Insurance could not rationally explain the disappearance of the summons and complaint or offer evidence of its procedures for handling such important legal mail. 812 F.2d at 897; *see also id.* at 898 (Haynsworth, S.C.J., concurring).

The situation in *Park Corp.* is clearly distinguishable from the situation here and the district court's heavy reliance on that case is misplaced. In *Park Corp.*, unlike here, the defaulting party offered *no explanation* for the disappearance of the summons and complaint, and made no showing that its internal procedures were designed to avoid such occurrences. Here, TCC admitted to its mishandling of process, and offered some explanation of why the suitpapers were forwarded to Beazer rather than to Hoover Universal.

Equally pertinent, the *Park Corp.* court reviewed the denial of a Fed. R. Civ. P. 60(b) motion for relief from a *default judgment*, not, as in this case, a Rule 55(c) motion to set aside entry of default. Although we have analyzed Rule 55(c) and

Rule 60(b) motions using the same factors, *see United States v. Moradi*, 673 F.2d 725, 727-28 (4th Cir. 1982), the burden on a movant seeking relief under the two rules is not the same. As the district court recognized, Rule 60(b) motions request relief from judgment, which implicates an interest in "finality and repose," *see id.*, a situation that is not present when default has been entered under Rule 55(a) and no judgment has been rendered. Therefore, while an analysis under each rule employs similar factors, Rule 60(b)'s "excusable neglect" standard is a more onerous standard than Rule 55(c)'s "good cause" standard, which is more forgiving of defaulting parties because it does not implicate any interest in finality. *See Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 785 (8th Cir. 1998) ("Although the same factors are typically relevant in deciding whether to set aside entries of default and default judgments, [m]ost decisions . . . hold that relief from a default judgment requires a stronger showing of excuse than relief from a mere default order. This is a sound distinction.") (ellipsis and brackets in original; citations omitted); *cf. Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 412-13 (4th Cir. 2010) (concluding that "excusable neglect" not established when plaintiff's counsel made strategic choice not to monitor trial court docket, resulting in failure to file opposition to motion for summary judgment until after judgment had been granted against plaintiff).

In sum, we adhere to our long-held view that Rule 55(c) motions must be "liberally construed in order to provide relief from the onerous consequences of defaults and default judgments. *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)." *Lolatchy*, 816 F.2d at 954 (internal quotation omitted).[8]

---

[8]To their credit (and no doubt mindful of the rather extreme position Colleton was taking) counsel for Colleton candidly advised the district court that they were vigorously opposing the motion to set aside the entry of default at the specific insistence of the Board of Trustees of Colleton, which apparently included as members at least two attorneys. *See* Case No. 2:04-cv-00531-DCN (D.S.C.) Docket No. 102, Trans. of Hrg, Nov. 17, 2003, 11-12. Of course, counsel must vigorously pursue their client's interests and counsel did so here in an entirely ethical manner.

### III.

For the reasons set forth herein, although we affirm the district court's order that service of process was proper,[9] we hold that the district court abused its discretion when it denied the motion filed by Hoover Universal to set aside the entry of default. Under the circumstances, the entire course of the district court proceedings, resting on the district court's flawed view that liability against Hoover Universal had been reliably established by the entry of default, is undermined. Accordingly, the judgment in favor of Colleton is affirmed in part, reversed in part, vacated in part, and the case is remanded for further proceedings consistent with this opinion, including pretrial proceedings and, if appropriate, a new trial on liability and damages.

---

[9]We find no error in the district court's denial of the motion to quash for insufficiency of service of process, which we review *de novo*. *See Marshall v. Warwick*, 155 F.3d 1027, 1030 (8th Cir. 1998). Under Federal Rules of Civil Procedure 4(h) and 4(e)(1), Colleton could elect to serve process on Hoover Universal under South Carolina law, which allows for service upon corporations "by registered or certified mail, return receipt requested and delivery restricted to the addressee." S.C. R. Civ. P. 4(d)(8). As proof of service, Colleton submitted the certified mail receipt, noting the date and place of mailing, date of delivery, and name of the addressee, The Corporation Company.

Hoover Universal claims that the service of process was flawed because the delivery was not restricted to the addressee, but this argument is unpersuasive. The South Carolina Supreme Court has noted that it will not require "exacting compliance" with the rules related to service of process. *Roche v. Young Bros., Inc. of Florence*, 318 S.C. 207, 209-10 (1995). Instead, the court inquires into "whether the plaintiff has sufficiently complied with the rules such that the court has personal jurisdiction of the defendant and the defendant has notice of the proceedings." *Id.* at 210. Here, if TCC had properly performed its duties as a registered agent, Hoover Universal would have had actual and timely notice of the lawsuit. It is undisputed that TCC did in fact receive the suitpapers, notwithstanding Colleton's failure to employ *restricted delivery* certified mail.

*AFFIRMED IN PART, REVERSED IN PART,
VACATED IN PART, AND REMANDED*